UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JAMES COLLITON,

                              Plaintiff,

            v.

CRAVATH, SWAINE & MOORE LLP,

                              Defendant.

ECF CASE

No. 08 Civ. 0400 (NRB)

# MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION
## TO DISMISS THE AMENDED COMPLAINT

Stuart W. Gold
Robert H. Baron
CRAVATH, SWAINE & MOORE LLP
825 Eighth Avenue
New York, NY 10019
(212) 474-1000

*Defendant pro se*

April 14, 2008

# TABLE OF CONTENTS

<u>Page</u>

Table of Authorities ................................................................................................ ii

Preliminary Statement ............................................................................................. 1

Undisputed Facts and Procedural Background ....................................................... 7

The Allegations of the Complaint .......................................................................... 8

Argument ............................................................................................................... 10

I.     This Court Should Dismiss Plaintiff's Breach of Contract Claims ................... 10

    A.     Plaintiff Never Met His Obligation to Comply with the Prevailing Rules of Conduct and Ethical Standards of the Legal Profession ............................. 11

    B.     Plaintiff May Not Enforce Any Alleged Employment Agreement with Cravath ....................................................................................................... 12

    C.     Plaintiff's Baseless Attempt to Pretend That He Was Employed as Something Other than an "Attorney" Is Both Demonstrably a Fraud on the Court and Legally Insufficient to Rescue His Claims ............................................... 15

II.    This Court Should Dismiss Plaintiff's Claims For Unjust Enrichment ............ 18

    A.     Plaintiff Has Failed to State a Claim ......................................................... 18

    B.     Plaintiff's Unclean Hands Preclude Equitable Relief ............................... 20

III.   This Court Should Dismiss Plaintiff's Breach of Fiduciary Duty Claim .......... 21

IV.   This Court Should Dismiss Plaintiff's Claim For Intentional Infliction of Emotional Distress .......................................................................................................... 23

    A.     Plaintiff's Claim Is Barred by the Applicable One-Year Statute of Limitations ................................................................................................. 24

    B.     Plaintiff Has Failed to State a Claim as a Matter of Law .......................... 25

V.    This Court Should Strike the Amended Complaint's Many Scandalous, Immaterial, and Prejudicial Allegations ....................................................................... 27

Conclusion ............................................................................................................ 29

i

# TABLE OF AUTHORITIES

Page(s)

## Cases

A.H. Emery Co. v. Marcan Prods. Corp., 389 F.2d 11 (2d Cir. 1968) .......................... 21

Ambris v. Bank of N.Y., No. 96 Civ. 0061 LAP, 1997 WL 107632 (S.D.N.Y.
    Mar. 10, 1997) ................................................................................................. 23

Bankers Trust Co. v. Litton Sys., Inc., 599 F.2d 488 (2d Cir. 1979) ............................ 18

Bazzano v. L'Oreal, S.A., No. 93 Civ. 7121 (SHS), 1996 WL 254873 (S.D.N.Y.
    May 14, 1996) ................................................................................................. 20

Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955 (2007) ............................................... 5, 17

Ben Krupinski Builder & Assocs., Inc. v. Baum, 828 N.Y.S.2d 583 (2d Dep't
    2007) ............................................................................................................. 19

Burger v. Health Ins. Plan of Greater N.Y., 684 F. Supp. 46 (S.D.N.Y. 1998) ...... 27, 28

Carr v. Hoy, 2 N.Y.2d 185 (1957) ........................................................................ 18

Chimarev v. TD Waterhouse Investor Servs., Inc., 280 F. Supp. 2d 208 (S.D.N.Y.
    2003) ............................................................................................................. 23

Clark v. Elam Sand and Gravel, Inc., 777 N.Y.S.2d 624 (Sup. Ct. 2004) .................... 23

Cohn & Berk v. Rothman-Goodman Mgmt. Corp., 509 N.Y.S.2d 367 (2d Dep't
    1986) ............................................................................................................. 20

Colliton v. Donnelly, et al., No. 1:07-cv-01922 (S.D.N.Y. filed Mar. 5, 2007) ............. 1

Colliton v. Gonzales, et al., No. 1:07-cv-02125 (S.D.N.Y. filed Mar. 13, 2007) ........... 1

Colliton v. Morgan, et al., No. 1:07-cv-08269 (S.D.N.Y. filed Sept. 24, 2007) ............. 1

Cortec Indus., Inc. v. Sum Holding L.P., 949 F.2d 42 (2d Cir. 1991) .......................... 16

Del. Health Care, Inc. v. MCD Holding Co., 893 F. Supp. 1279 (D. Del. 1995) ........... 27

ENH, Inc. v. Int'l Diffusion SRL, No. 97 CIV. 3202 (LAP), 1997 WL 294388
    (S.D.N.Y. June 2, 1997) ................................................................................... 20

Fahmy v. Duane Reade, Inc., No. 05 Civ. 9479, 2006 WL 2322672 (S.D.N.Y.
    Aug. 8, 2006) ................................................................................................. 25

Page(s)

Feiger v. Iral Jewelry, Ltd., 41 N.Y.2d 928 (1977) ................................................... 14

Ferguson v. Lion Holdings, Inc., 312 F. Supp. 2d 484 (S.D.N.Y. 2004) ..................................... 12

G-I Holdings, Inc. v. Baron & Budd, 238 F. Supp. 2d 521 (S.D.N.Y. 2002)................................. 28

Ginsberg v. Schron, 732 N.Y.S.2d 858 (1st Dep't 2001) ................................................. 13

Glover v. Mary Jane M. Elliott, P.C., No. 1:07-CV-648, 2007 WL 2904050 (W.D.
    Mich. Oct. 2, 2007) .............................................................................. 28

Golden Pac. Bancorp v. FDIC, No. 95 Civ 9281, 2002 WL 31875395 (S.D.N.Y.
    Dec. 26, 2002) ................................................................................... 18

Goldstein v. Mass. Mut. Life Ins. Co., 820 N.Y.S.2d 852 (2d Dep't 2006)................................. 24

Gorman v. Consol. Edison Corp., 488 F.3d 586 (2d Cir. 2007) ........................................... 8

Green v. Leibowitz, 500 N.Y.S.2d 146 (2d Dep't 1986)...................................................26

Haskins v. Thomajan, 470 N.Y.S.2d 41 (2d Dep't 1984)................................................. 20

Howell v. N.Y. Post Co., 81 N.Y.2d 115 (1993) ............................................... 23, 25, 26

Hughes Aircraft Co. v. Jacobson, 525 U.S. 432 (1999)................................................... 22

In re RCN Litig., No. 04-5068 (SRC), 2006 WL 753149 (D.N.J. Mar. 21, 2006)....................... 23

Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co., 62 F.3d 69 (2d Cir. 1995) ...................... 16

Isaacson v. Isaacson, 28 N.Y.S.2d 517 (Sup. Ct. 1941) ................................................. 21

Ives Lab., Inc. v. Darby Drug Co., 638 F.2d 538 (2d Cir. 1981).......................................... 7

Jafari v. Wally Findlay Galleries, 741 F. Supp. 64 (S.D.N.Y. 1990) ..................................... 13

Jamison v. Senkowski, No. 99 CIV 9424, 2001 WL 246397 (S.D.N.Y. Mar. 13,
    2001) ............................................................................................... 7

Kaye v. Grossman, 202 F.3d 611 (2d Cir. 2000)......................................................... 18

Lamdin v. Broadway Surface Adver. Corp., 272 N.Y. 133 (1936)......................................... 15

Lydeatte v. Bronx Overall Econ. Dev. Corp., No. 00 Civ 5433 (GBD), 2001 WL
    180055 (S.D.N.Y. Feb. 22, 2001) ................................................................. 25

Mahurin v. Moss, 313 F. Supp. 1264 (E.D. Mo. 1970) ................................................. 28

iii

Page(s)

Mar. Fish Prods., Inc. v. World-Wide Fish Prods., Inc., 474 N.Y.S.2d 281 (1st
Dep't 1984) ................................................................................................. 14

McConnell v. Commonwealth Pictures Corp., 7 N.Y.2d 465 (1960).................................... 18, 19

NFS Servs., Inc. v. W. 73rd St. Assocs., 477 N.Y.S.2d 135 (1st Dep't 1984)............................ 19

Oshinsky v. N.Y.C. Hous. Auth., No. 98 Civ. 5467 (AGS), 1999 WL 553826
(S.D.N.Y. July 29, 1999) ............................................................................. 24

PenneCom B.V. v. Merrill Lynch & Co., 372 F.3d 488 (2d Cir. 2004) ........................................ 20

Phansalkar v. Andersen Weinroth & Co., L.P., 344 F.3d 184 (2d Cir. 2003) ............................ 14

Pietrangelo v. NUI Corp., No. Civ. 04-3223 (GEB), 2005 WL 1703200 (D.N.J.
July 20, 2005).............................................................................................. 23

Pigford v. Veneman, 215 F.R.D. 2 (D.D.C. 2003) ...................................................... 27, 28

Precision Instrument Mfg. Co. v. Auto Maint. Mach. Co., 324 U.S. 806 (1945)......................... 21

Rush v. Oppenheimer & Co., 650 F. Supp. 682 (S.D.N.Y. 1986)................................................ 12

Silverman v. Mut. Benefit Life Ins. Co., 138 F.3d 98 (2d Cir. 1998) ........................................ 22

Smith v. Fields, No. 95 CIV 8374 (DAB), 2002 WL 342620 (S.D.N.Y. Mar. 4,
2002) ....................................................................................................... 7

Smith v. N.Y. Presbyterian Hosp., No. 06 Civ 4056, 2007 WL 2142312
(S.D.N.Y. July 18, 2007) ........................................................................... 25, 26

Specialty Minerals, Inc. v. Pluess-Staufer AG, 395 F. Supp. 2d 109 (S.D.N.Y.
2005) ....................................................................................................... 28

Spivak v. Sachs, 16 N.Y.2d 163 (1965)........................................................................... 19

Spyder Enterprises v. Ward, 872 F. Supp. 8 (E.D.N.Y. 1995) ................................................ 11

Sundland v. Korfund Co., 20 N.Y.S.2d 819 (1st Dep't 1940)................................................ 14, 15

Three Crown Ltd. P'ship v. Caxton Corp., 817 F. Supp. 1033 (S.D.N.Y. 1993)....................26

W. Elec. Co. v. Brenner, 41 N.Y.2d 291 (1977)................................................................ 14

Wallace v. N.Y.C. Dep't of Corr., No. 95 Civ 4404, 1996 WL 586797 (E.D.N.Y.
Oct. 9, 1996)................................................................................................ 16

Page(s)

Wieder v. Skala, 80 N.Y.2d 628 (1992) ............................................................ passim

Young v. Chem. Bank, N.A., No. 87 CIV. 8601 (JFK), 1988 WL 130929
    (S.D.N.Y. Dec. 1, 1988)........................................................................... 23

**Statutes and Rules**

22 NYCRR § 603.2(a) (West 2008) ................................................................... 2

22 NYCRR § 603.4(e)(1)(ii) (West 2008) ......................................................... 3

22 NYCRR § 603.4(e)(1)(iii) (West 2008)......................................................... 3

29 U.S.C. § 1104(c)(1)(B) ................................................................................. 23

29 U.S.C. § 1109(a) ........................................................................................... 22

29 U.S.C. § 1132(a)(2) ...................................................................................... 22

CFR § 2550.404c-1 ............................................................................................ 23

DR 1-102(a)(3) (2007) ....................................................................................... 2

Fed. R. Civ. P. 11............................................................................................... 3

Fed. R. Civ. P. 12(b)(6)...................................................................................... 1

Fed. R. Civ. P. 12(f).......................................................................................... 1, 27

Fed. R. Evid. 201(b)........................................................................................... 7

Fed. R. Evid. 201(d)........................................................................................... 7

N.Y. Civ. Rights L. § 50 .................................................................................... 23

N.Y. Civ. Rights L. § 51 .................................................................................... 23

N.Y. Jud. Law § 90(2)(a) (McKinney 2008) .................................................. 3, 12

N.Y. Jud. Law § 90(2)(b) (McKinney 2008) .................................................. 3, 12

N.Y. Jud. Law § 90(4)(a) (McKinney 2008) .................................................. 3, 12

N.Y. Jud. Law § 90(4)(b) (McKinney 2008) ................................................... 3

Page(s)

**Other Authorities**

21B Charles Alan Wright & Kenneth W. Graham, Jr., <u>Federal Practice and Procedure</u> § 5106.4 (2d ed. 2005) ............................................................................... 7

23 Williston on Contracts § 63:8 (4th ed. 2002) ........................................................... 13

N. Raymond, <u>Shameless:  The Lolita Lawyer Sues Cravath in Longhand</u>, Am. Law., Feb. 2008 .......................................................................................................... 1

Defendant Cravath, Swaine & Moore LLP ("Cravath") submits this memorandum of law in support of its motion to dismiss Plaintiff James Colliton's Amended Complaint, Fed. R. Civ. P. 12(b)(6), or alternatively to strike its scurrilous allegations, Fed. R. Civ. P. 12(f).

## PRELIMINARY STATEMENT

This is a strike suit brought by an admitted and convicted felon for the transparent purpose of extorting a settlement. As Plaintiff -- who has also sued the police officers, district attorneys, and prison officials involved in his arrest, conviction and incarceration[1] -- publicly stated: "I have all the time in the world because I doubt I'll be reinstated to the bar if I ever tried".[2]

Plaintiff was an attorney employed by Cravath from December 26, 2000, until March 1, 2006 (Am. Compl. ¶ 13), when he was fired after his criminal conduct came to light. He now sues Cravath for a laundry list of meritless claims, such as breach of a purported oral contract, unjust enrichment and intentional infliction of emotional distress. He also makes a kitchen sink full of baseless allegations of wrongdoing wholly unrelated to Plaintiff or his employment that are transparently pleaded solely to harass Cravath. In short, Plaintiff may not recover. He was not qualified to be an attorney either at the time he was hired by Cravath or during his entire tenure at the firm. Indeed, Plaintiff fraudulently induced Cravath to hire and continue to employ him, failed to comply with his legal obligations, and failed to disclose his

---

[1] Colliton v. Morgan, et al., No. 1:07-cv-08269 (S.D.N.Y. filed Sept. 24, 2007) (Swain, J.); Colliton v. Donnelly, et al., No. 1:07-cv-01922 (S.D.N.Y. filed Mar. 5, 2007) (Swain, J.); Colliton v. Gonzales, et al., No. 1:07-cv-02125 (S.D.N.Y. filed Mar. 13, 2007) (Holwell, J.).

[2] N. Raymond, Shameless: The Lolita Lawyer Sues Cravath in Longhand, Am. Law., Feb. 2008, attached as Ex. 1 to the Declaration of Robert H. Baron ("Baron Decl."), dated April 14, 2008.

criminal misconduct -- thereby breaching any employment agreement that he might allege existed and barring any claim for additional compensation or unjust enrichment.

The New York Court of Appeals has held that there is an implied-in-law obligation in the relationship between a law firm and the lawyers it employs that both those lawyers and the firm will comply with the profession's ethical standards. See Wieder v. Skala, 80 N.Y.2d 628, 635-36 (1992). "Defendants, a firm of lawyers, hired plaintiff to practice law and this objective was the only basis for the employment relationship. Intrinsic to this relationship, of course, was the unstated but essential compact that in conducting the firm's legal practice both plaintiff and the firm would do so in compliance with the prevailing rules of conduct and ethical standards of the profession." Id. at 637-38.

Unbeknownst to Cravath, Plaintiff violated this "essential compact" both immediately before and during his employment by engaging (repeatedly) in felonious criminal activity. In October 2007, Plaintiff pleaded guilty to felony charges of statutory rape. Among other things, he admitted that he had sex with a girl under the age of 15 on numerous occasions while he was employed at Cravath and that he had sex with girls under the age of 17 on numerous occasions -- including in the months before he went to work at Cravath and indeed on December 25, 2000, the day before his employment at Cravath began. (10/2/2007 Plea Tr., Baron Decl., Ex. 2, at 10-13.)

Plaintiff's admitted crimes constitute misconduct under the New York Lawyer's Code of Professional Responsibility and the rules of the Appellate Division, First Department. See DR 1-102(a)(3) (2007); 22 NYCRR § 603.2(a) (West 2008). Had he disclosed his criminal behavior, he would already have been suspended from legal practice, disbarred and ordered to desist from practicing law prior to his employment at Cravath. See 22 NYCRR

§§ 603.4(e)(1)(ii), (iii) (West 2008); N.Y. Jud. Law §§ 90(2)(a), (2)(b), (4)(a), (4)(b) (McKinney 2008). Plaintiff could never have held himself out to Cravath as an attorney, see N.Y. Jud. Law §§ 90(2)(a), (2)(b), (4)(a), (4)(b), and obviously would never have been hired to work at the firm as a lawyer, or in any other capacity.

In its pre-motion letter, Cravath alerted this Court, and Plaintiff, to Plaintiff's blatant violations of his obligations under Wieder. (1/16/2008 Letter from Robert H. Baron to the Hon. Naomi Reice Buchwald ("Pre-motion Letter"), Baron Decl., Ex. 3, at 2.) Cravath further explained that all of Plaintiff's claims were incurably defective as a matter of law. (Id. at 2-3.) Plaintiff requested leave to amend his Complaint, which this Court granted with the admonition that he "do so consistently with Fed. R. Civ. P. 11 and in a fashion that addresses the issues identified by defendants". (1/23/2008 Letter from the Hon. Naomi Reice Buchwald to the parties ("1/23/2008 Letter"), Baron Decl., Ex. 4.) Plaintiff has utterly ignored that admonition. Instead, he filed a 299-paragraph Amended Complaint full of frivolous allegations that have absolutely no bearing on Plaintiff's claims or Cravath's arguments.

For example, Plaintiff alleges that Cravath has discriminated against Jewish, female, Hispanic, and African-American attorneys. (See Am. Compl. ¶¶ 76-104.)[3] He further alleges that Cravath "employed an entire force to 'spy' on plaintiff and other [Cravath] employees, and concealed such Acts by not listing the members of such force on the employee roster and not permitting such members to eat at the employee cafeteria or interact with other employees". (Id. ¶ 186(j).) We would not waste the Court's time discussing these allegations, since they are wholly irrelevant to the subject matter of Plaintiff's claims (i.e., additional

---

[3] Plaintiff does not allege that he is Jewish, Hispanic and/or African-American, and his pleading uniformly refers to him using the masculine gender.

compensation), but for the fact that, in an obvious effort to harass Cravath for the purpose of extorting a settlement, Plaintiff has alleged all manner of grotesque lies without any regard for Rule 11's requirements. While Plaintiff pretends that his equally frivolous, time-barred intentional infliction of emotional distress claim provides a justification for including this nonsense in his Amended Complaint, that is no more true than the allegations themselves.

Plaintiff's effort to plead around Wieder is just as dishonest. In a blatant attempt to avoid that decision, he now claims: "[Cravath], throughout the Employment Period, referred to plaintiff by the title 'Specialist'. Plaintiff was never, at any time during the Employment Period, an associate, a senior attorney or counsel." (Id. ¶ 22.) He also avers that he performed "a wide array of services that did NOT constitute the provision of legal advice or services to [Cravath's] clients". (Id. ¶ 17.) Those "specialist" services purportedly constituted 85 percent of his total services based on value and 65 percent of his total services based on time. (Id. ¶ 23; see also id. ¶ 20.) Such allegations are demonstrably false. In his original, verified complaint, Plaintiff swore that he "was continuously employed as an attorney" by Cravath. (Compl., Baron Decl., Ex. 5, ¶ 5.) Plaintiff even now acknowledges that he "was continuously employed as an attorney and as a specialist by [Cravath]" (Am. Compl. ¶ 13 (emphasis added)) and provided "services to [Cravath] as an attorney" (id. ¶ 16 (emphasis added)). His after-the-fact allocation of time between providing legal advice and performing other professional tasks is meaningless. Obviously, Plaintiff was hired as an attorney and therefore expected to be qualified to provide legal advice whenever he was called upon to do so. Once again, he has just made up facts to suit his claims with utter disregard for the evidentiary basis mandated by Rule 11.

Despite Plaintiff's fabricated allegations and false distinctions, his second complaint is no better than his first. Each claim remains incurably defective:

4

First, Plaintiff's breach of contract claims must be dismissed. He never met his obligation to comply with the prevailing rules of conduct and ethical standards of the legal profession. Thus, he may not enforce any alleged employment agreement because (1) he fraudulently induced Cravath both to hire him and to continue to employ him by concealing his ongoing sex crimes, (2) he committed a prior material breach of any employment agreement through his crimes, and (3) those crimes and their subsequent concealment by him bar the recovery of employment compensation under New York law. To be sure, this Court should reject Plaintiff's attempt to allege that he was employed as a "specialist" rather than an "attorney" since it is contradicted by (inter alia) his original, verified Complaint. Moreover, it is facially absurd to suggest -- as Plaintiff does (see id. ¶ 36) -- that Cravath would have hired or continued to employ him in any capacity if it had known that he was committing felony sex crimes when hired and during his employment. In any event, there can be no doubt that a law firm expects the lawyers it employs to be licensed (or capable of being licensed) -- no matter what percentage of their time is spent giving legal advice. This Court is in no way obliged to proceed with a case based on Plaintiff's implausible premise. See Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1964-65 (2007) ("Factual allegations must be enough to raise a right to relief above the speculative level".).

Second, Plaintiff's claims for unjust enrichment and other equitable relief must be dismissed. He has failed to state a claim because he may not seek to profit from his own fraud. His equitable claims are also barred by his undeniably unclean hands as an admitted and convicted felon who misled Cravath into hiring him in the first place and continuing his employment thereafter.

5

Third, Plaintiff's breach of fiduciary duty claim must be dismissed. His allegations do not give rise to a claim of fiduciary breach under the Employee Retirement Income Security Act of 1974 ("ERISA"). His claims relating to the investment options provided do not call into play any of Cravath's fiduciary functions. Moreover, he has not even attempted to allege how Cravath's purported fiduciary breaches caused his $15,000 in alleged losses -- though Cravath highlighted the same defect in his original Complaint. In any event, ERISA § 404(c) precludes liability for any losses sustained as a result of his poor investment choices.

Fourth, Plaintiff's claim for intentional infliction of emotional distress must be dismissed. The claim is barred by the applicable one-year statute of limitations. Further, Plaintiff fails to plead any of the claim's required elements. He has not sufficiently alleged (1) any extreme or outrageous conduct by Cravath that affected him; (2) Cravath's intent to cause him distress; (3) severe emotional distress; and/or (4) a causal connection between Cravath's purported conduct and his supposed injury.

This Court has afforded Plaintiff "the opportunity to amend his complaint in response to defendants' submission". (1/23/2008 Letter.) He still fails to state a claim. Further amendment would be futile. Accordingly, this Court should dismiss the Amended Complaint with prejudice. (Id.) If the Court permits any of Plaintiff's claims to survive this motion to dismiss, however, it should strike the Amended Complaint's patently frivolous allegations of Cravath's purported discrimination and criminal, fraudulent, and unethical conduct. They have no bearing on the subject matter of this case -- whether Plaintiff is entitled to additional employment compensation during the 26 months covered by his claims -- and can only provide a platform for harassment and the needless multiplication of proceedings in a meritless lawsuit.

## UNDISPUTED FACTS AND PROCEDURAL BACKGROUND

On February 16, 2006, a warrant was issued for Plaintiff's arrest on charges of rape and patronizing a prostitute. (Felony Arrest Warrant, Baron Decl., Ex. 6.)[4] He fled to Canada where he was arrested on February 24, 2006. (6/20/2007 Decision and Order of Justice A. Kirke Bartley ("Bartley Decision"), Baron Decl., Ex. 7, at 2-4.)[5] On March 1, 2006, Plaintiff was fired. (See Am. Compl. ¶ 13.) On March 3, 2006, Plaintiff was apprehended in Manhattan. (Bartley Decision at 4-6.) Thereafter, he was indicted on four counts of statutory rape, two counts of patronizing a prostitute, four counts of bribing a witness, two counts of witness tampering, two counts of promoting prostitution, and one count of endangering the welfare of a child. (2/24/2006 Indictment, Baron Decl., Ex. 8.)

On October 2, 2007, Plaintiff, who was over 40 years old, pled guilty to charges of statutory rape. (10/2/2007 Plea Tr. at 11-13.) He admitted having sex with a girl under the age of 17 on numerous occasions between December 25, 2000, and January 14, 2001, and having

---

[4] Cravath respectfully requests that the Court take judicial notice of the facts regarding Plaintiff's crimes, as supplied in the accompanying Declaration of Robert H. Baron and the exhibits thereto. Plaintiff's felony arrest warrant, indictment, and plea allocution are "not subject to reasonable dispute" in that they are "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned". Fed. R. Evid. 201(b). Judicial notice of these matters is mandatory. See Fed. R. Evid. 201(d) ("A court shall take judicial notice if requested by a party and supplied with the necessary information."); see also 21B Charles Alan Wright & Kenneth W. Graham, Jr., Federal Practice and Procedure § 5106.4 (2d ed. 2005) ("[S]ince the enactment of Rule 201 federal courts notice the records of any court, state or federal."); Ives Lab., Inc. v. Darby Drug Co., 638 F.2d 538, 544 n.8 (2d Cir. 1981) (taking judicial notice of the return of indictments), rev'd on other grounds sub nom. Inwood Labs., Inc. v. Ives Labs., Inc., 456 U.S. 844 (1982); Jamison v. Senkowski, No. 99 CIV 9424, 2001 WL 246397, at *7 (S.D.N.Y. Mar. 13, 2001) (Buchwald, J.) (taking judicial notice of a guilty plea).

[5] Plaintiff is collaterally estopped from challenging the findings of fact at the suppression hearing in his criminal proceedings, which are stated in the Bartley Decision. "The doctrine of collateral estoppel prevents a party from relitigating an issue of fact or law that has been decided in an earlier action." Smith v. Fields, No. 95 CIV. 8374 (DAB), 2002 WL 342620, at *1 nn.2 & 3 (S.D.N.Y. Mar. 4, 2002) (the plaintiff was collaterally estopped from denying facts found at a state court suppression hearing).

sex with a girl under the age of 15 on numerous occasions between February 1, 2005, and March 1, 2005. (Id. at 10-12.)  He admitted having sex in exchange for money with another girl under the age of 17 on numerous occasions between August 1, 2000, and February 11, 2004. (Id. at 11-12.)  Plaintiff was sentenced to one year in prison, concurrent on each charge. (Id. at 10.)  He was imprisoned for 19 months. (Id. at 4.)

On December 27, 2007, Plaintiff filed suit against Cravath in the Supreme Court, State of New York, and served his original Complaint.  On January 15, 2008, Cravath removed the action to this Court.  On February 28, 2008, Plaintiff filed an Amended Complaint.

## THE ALLEGATIONS OF THE COMPLAINT[6]

In his Amended Complaint, Plaintiff alleges that, "[i]n consideration for his Attorney Services and his Specialist Services", Cravath "committed to compensate [him] pursuant to a wide array of various agreements".  (Am. Compl. ¶ 37.)  He names six current and former partners in Cravath's tax department who made the alleged commitments (the "Tax Partners").  (Id. ¶ 38.)  He also makes the following additional false assertions:

**Breach of Contract.**  Plaintiff alleges that Cravath breached several purported oral agreements with him.  First, each year during his employment, "multiple Tax Partners" allegedly promised him that his annual compensation and benefits would equal or exceed those of any other "non-partner" employed in the executive compensation and benefits department (id. ¶ 46) but Cravath paid another such employee greater compensation and benefits in 2004, 2005, and 2006 (id. ¶¶ 52-54).  Second, "[o]n a certain date . . . subsequent to January 1, 2002",

---

[6] While the Court must accept the factual allegations in the Amended Complaint as true for purposes of this motion, see Gorman v. Consol. Edison Corp., 488 F.3d 586, 591-92 (2d Cir. 2007), Cravath categorically denies plaintiff's allegations that it engaged in any unlawful or wrongful conduct.

Cravath allegedly promised all attorney employees a "make-up bonus" but never paid such a bonus to him. (Id. ¶¶ 58-60.) Third, "[Cravath] and certain Tax Partners" allegedly promised him a "pro-rata annual bonus" for any year in which he did not remain employed at year-end (id. ¶ 61) but did not pay him a pro-rata annual bonus for 2006 (when he was fired and imprisoned for his crimes) (id. ¶ 63). Fourth, "[Cravath] and certain Tax Partners" allegedly promised to pay him, upon termination of his employment, for "all of the time off that plaintiff accrued . . . but did not use, including . . . vacation, sick leave, holidays and bereavement leave" (id. ¶ 64) but paid only for "certain accrued but unused vacation days in 2004, 2005 and 2006" (id. ¶ 66).[7]

**Unjust Enrichment.** Plaintiff alleges that Cravath "benefited substantially" from his labor at his expense because he "was required to work incredibly hard to overcome the obstacles placed in his way by [Cravath] to perform his services" and that "equity and good conscience" require Cravath to pay what it promised and owes him. (Id. ¶¶ 268, 275, 282.)

**Breach of Fiduciary Duty.** Plaintiff alleges that Cravath "materially breached its fiduciary responsibilities" with respect to the Savings Plan for Senior Attorneys and Associates of Cravath, Swaine & Moore LLP (the "Plan") (id. ¶¶ 122, 238) by, inter alia, failing to (1) appoint competent co-fiduciaries, (2) monitor co-fiduciaries appropriately, and (3) analyze Plan investments to ascertain "diversification opportunities" for participants (id. ¶ 155). He supposedly suffered $15,000 in losses because Cravath's "material fiduciary breaches . . . prevented the Plan from being operated prudently and thereby caused a lack of required

---

[7] In the Eighth through Thirteenth Causes of Action, the Amended Complaint asserts claims based on the same breach of contract allegations, but seeks in the alternative only 85 percent of the amounts sought in his First through Sixth Causes of Action. (See id. ¶¶ 245, 250, 255, 258, 261, 264.) It alleges that, "based on time", Plaintiff's services to Cravath as a non-legal specialist "constituted 85% of the total value" of his services to Cravath. (Id. ¶ 23; see also id. ¶¶ 243, 248, 253.)

investment opportunities". (Id. ¶ 156.) He claims that Cravath is responsible for his alleged losses because the Plan failed to permit him to exercise control over the assets in his accounts. (Id. ¶¶ 147, 157.) He further claims that Cravath failed to include certain required information in the Summary Plan Description (the "SPD") (id. ¶¶ 128-35) and failed to provide him with a copy of the SPD (id. ¶ 126).

**Intentional Infliction of Emotional Distress.** Plaintiff alleges that, during his employment and continuing until January 16, 2008, Cravath and its partners "engaged in a series of intentional actions" meant "to bring about emotional distress" or "exhibiting a reckless disregard for the likelihood of causing emotional distress" in him. (Id. ¶ 182.) He asserts that Cravath engaged in conduct "that was both extreme and outrageous", "actually caused [him] emotional distress", and "constituted a pattern of abuse and fraud" that he nevertheless did not discover (and could not have discovered) until 2008. (Id. ¶¶ 183-85.) The alleged "intentional actions" forming the basis of his claim are: Cravath's alleged treatment of Jewish, female, Hispanic, and African-American attorneys; the alleged unauthorized practice of law by Cravath partners; alleged criminal conduct and fiduciary breaches related to the Plan; other alleged assorted violations of the Code of Professional Responsibility and applicable disciplinary rules; and alleged conduct that created "an extremely stressful work environment". (Id. ¶ 186.)

## ARGUMENT

I.  **THIS COURT SHOULD DISMISS PLAINTIFF'S BREACH OF CONTRACT CLAIMS.**

Plaintiff claims that Cravath breached its alleged promises concerning his 2004, 2005 and 2006 compensation (id. ¶¶ 188, 196, 205); his "make-up bonus" (id. ¶ 214); his pro rata

annual bonus for 2006 (id. ¶ 222); and his accrued but unused time off (id. ¶ 230).[8]  Plaintiff may

not enforce any alleged employment agreement with Cravath, regardless of his status as an

attorney or a specialist.  His breach of contract claims are defective as a matter of law.

**A.**    **Plaintiff Never Met His Obligation to Comply with the Prevailing Rules of Conduct and Ethical Standards of the Legal Profession.**

Plaintiff was hired as an attorney to practice law.  He admitted, under oath, in his

original, verified Complaint:  "Plaintiff was continuously employed as an attorney by [Cravath]

between December 26, 2000, and March 1, 2006."  (Compl. ¶ 5 (emphasis added).)  Even in his

backtracking Amended Complaint, Plaintiff admits that he was "continuously employed as an

attorney" by Cravath (Am. Compl. ¶ 13 (emphasis added)) and acknowledges that his "services

to [Cravath] as an attorney (the 'Attorney Services') consisted of providing legal advice and

services" (id. ¶ 16 (emphasis added)).

As discussed above, the New York Court of Appeals has held that there is an

implied-in-law obligation in the relationship between a law firm and the lawyers it employs.  See

Wieder, 80 N.Y.2d at 635-36, 638.  "[I]n any hiring of an attorney as an associate to practice law

with a firm there is implied an understanding so fundamental to the relationship and essential to

its purpose as to require no expression:  that both the associate and the firm in conducting the

practice will do so in accordance with the ethical standards of the profession".  Id. at 635-36.

---

[8] Relying on Spyder Enterprises v. Ward, 872 F. Supp. 8 (E.D.N.Y. 1995), Plaintiff claims that "it is too late for [Cravath] to deny its obligation to honor its contracts with plaintiff" because it made certain payments on January 23, 2007, "[a]fter any misconduct by plaintiff had already been much publicized" and "did not reserve a right to object later to any breach of contract by plaintiff".  (Am. Compl. ¶¶ 169-71 and heading "Q".)  Spyder holds that "[a] party seeking to rescind a contract must do so promptly once that party becomes cognizant of its breach".  872 F. Supp. at 13 (emphasis added).  Cravath does not currently seek to rescind any contract with Plaintiff.  In any event, the record in this case shows that Cravath informed Plaintiff, through its letter dated January 16, 2008, that it had no obligations to him promptly after learning for the first time, through his Complaint, of the fabricated allegations of an oral agreement that Plaintiff advances here.

Plaintiff concedes that the holding applies to his breach of contract claims. (Am. Compl. ¶¶ 69-75.) Indeed, he explicitly admits: "Plaintiff's Obligation to CSM whenever he was performing Attorney Services was applicable whenever his conduct as an attorney was subject to the Code [i.e., the New York Lawyer's Code of Professional Responsibility]." (Id. ¶ 73.) During his entire tenure at Cravath, Plaintiff was never in compliance with that obligation.

### B.    Plaintiff May Not Enforce Any Alleged Employment Agreement with Cravath.

In its Pre-motion Letter to the Court, Cravath outlined the fatal weaknesses in Plaintiff's breach of contract claims in light of Wieder. (Pre-motion Letter at 2.) Plaintiff breached his obligation to comply with the ethical standards of the legal profession both immediately before and during his employment by (repeatedly) committing sex crimes. Those crimes plainly violated the prevailing standards of professional conduct. Had he disclosed his crimes when he sought employment at Cravath, he never would have been hired in the first place. He would have been disbarred. See N.Y. Jud. Law §§ 90(2)(a), (2)(b), (4)(a), (4)(b). As a result of his criminal misconduct, Plaintiff may neither enforce any alleged employment agreement with Cravath nor recover on his other claims.

First, a plaintiff's fraud is a complete defense to a breach of contract claim where the plaintiff's acts of concealment induced the defendant to enter into the alleged contract. See Ferguson v. Lion Holdings, Inc., 312 F. Supp. 2d 484, 497-501 (S.D.N.Y. 2004) (a contract induced by fraudulent concealment may be rescinded); Rush v. Oppenheimer & Co., 650 F. Supp. 682, 683 (S.D.N.Y. 1986) (a contract induced by a material misrepresentation is voidable).

By concealing from Cravath his criminal misconduct -- which began no later than August 1, 2000 (i.e., several months before he was hired), and continued until at least March 1, 2005 (i.e., more than four years after he started at Cravath) -- Plaintiff misrepresented facts that

indisputably would have precluded Cravath from making any agreement to employ him or continue his employment on any terms. His felonies were plainly material, and rendered him unquestionably unfit for the job that he was hired to perform. In the absence of any disclosure by Plaintiff, Cravath was entitled as a matter of law to rely on its understanding that he was in compliance with the prevailing rules of conduct of the legal profession. Plaintiff fraudulently induced Cravath to enter into and continue its employment relationship with him. He may not recover on his claims.

Second, by pleading guilty to felonies committed prior to (and during) his tenure at Cravath, Plaintiff has admitted that he committed a prior material breach of any alleged employment agreement with Cravath. A plaintiff may not recover damages for breach of contract when he commits a prior material breach of that contract himself. See 23 Williston on Contracts § 63:8 (4th ed. 2002) ("A party to a contract who is already personally in default cannot, as a general principle . . . maintain a suit for its breach, even if the other party subsequently breaches the contract as well."); Jafari v. Wally Findlay Galleries, 741 F. Supp. 64, 68 (S.D.N.Y. 1990) ("[W]here a party materially breaches, he has failed to substantially perform the contract, and the other party is discharged from performing his obligation."); Ginsberg v. Schron, 732 N.Y.S.2d 858 (1st Dep't 2001).

On the day Plaintiff started at Cravath -- after committing felonious statutory rape just the day before, December 25, 2000 (10/2/2007 Plea Tr., at 10-11) -- he was in material breach of his obligation to comply with the prevailing rules of conduct and ethical standards of the legal profession. During the five years that followed, he continued to commit felony sex crimes and hence further material breaches of any alleged employment agreement, long before Cravath first allegedly breached any such agreement in 2004. Consequently, even if this Court

13

accepts that the alleged oral agreements existed (and they did not) and that Cravath breached such agreements (and it did not), Plaintiff was already in default and cannot assert claims for breach of contract.

Third, Plaintiff's commission and subsequent concealment of his serious crimes bar the recovery of employment compensation under New York law. It is settled that an employee's misconduct may be asserted by way of defense to an action seeking such compensation. See Phansalkar v. Andersen Weinroth & Co., L.P., 344 F.3d 184, 200, 211 (2d Cir. 2003) (finding that an agent who concealed material information from his employer forfeited all compensation after his first disloyal act). An employee has an "affirmative duty to act in his employer's best interests". Id. at 204 (emphasis in original); Mar. Fish Prods., Inc. v. World-Wide Fish Prods., Inc., 474 N.Y.S.2d 281, 286 (1st Dep't 1984). He is obligated to be loyal to his employer, prohibited from acting in any manner inconsistent with his agency or trust, and at all times bound to exercise the utmost good faith and loyalty in the performance of his duties. See Phansalkar, 344 F.3d at 200; W. Elec. Co. v. Brenner, 41 N.Y.2d 291, 295 (1977). An employee "who is faithless in the performance of his services is generally disentitled to recover his compensation, whether commissions or salary." Phansalkar, 344 F.3d at 200; see also Feiger v. Iral Jewelry, Ltd., 41 N.Y.2d 928, 928 (1977).

By committing numerous crimes over the course of more than four years, which if disclosed would have prevented him from practicing law, Plaintiff time and again violated his employment obligations to Cravath. See Sundland v. Korfund Co., 20 N.Y.S.2d 819, 821 (1st Dep't 1940) ("[W]here the dishonesty of a servant is of such a character as to justify the conclusion that his contract of service has been violated by reason of misconduct and disloyalty which substantially affect the contract of employment, then there may be no recovery for such

14

service."). His flagrant, repeated criminal acts are plainly material to his service as an attorney and Cravath's interests as a law firm. See id. at 822 ("Flagrant acts of dishonesty or crime which seriously affect the master's interest, continued during the service, might well be regarded as a bar to the recovery of wages".). Indeed, it is hard to imagine that an attorney could fall further below the standard of ethical conduct required of lawyers than did Plaintiff. See Lamdin v. Broadway Surface Adver. Corp., 272 N.Y. 133, 138 (1936) (holding that an employee who "fell below the standard required by the law of one acting as an agent or an employee of another" forfeits any salary due). His criminal misconduct is a complete defense to his claims for compensation under any alleged employment agreements.

C. **Plaintiff's Baseless Attempt to Pretend That He Was Employed as Something Other than an "Attorney" Is Both Demonstrably a Fraud on the Court and Legally Insufficient to Rescue His Claims.**

In a transparent attempt to escape Wieder's admitted ramifications (Am. Compl. ¶¶ 69-73), Plaintiff seeks to recast himself as a "specialist" more than a lawyer, who primarily performed services that did not require him to be a practicing attorney or member of the bar (id. ¶¶ 23, 74-75). He alleges that such specialist services were "separate and distinct for all purposes" from his work as an attorney. (Id. ¶ 75.) That is simply absurd. This Court must disregard such allegations, which are contradicted by Plaintiff's original, verified Complaint.

First, Plaintiff's verified Complaint made clear that his services as an attorney were "the only purpose of his association with [Cravath]". Wieder, 80 N.Y.2d at 635. Plaintiff averred under oath that Cravath was "a law firm engaged in the business of providing legal services" (Compl. ¶ 3) and that he "was continuously employed as an attorney by [Cravath] between December 26, 2000, and March 1, 2006" (id. ¶ 5). He cannot run from his sworn allegations and file an Amended Complaint that contradicts them. This Court should accept as true Plaintiff's averment that he was employed as an attorney. See Wallace v. N.Y.C. Dep't of

15

Corr., No. 95 Civ. 4404, 1996 WL 586797, at *2 (E.D.N.Y. Oct. 9, 1996) ("The plaintiff blatantly changes his statement of the facts in order to respond to the defendants' motion to dismiss. In this amended complaint, the plaintiff directly contradicts the facts set forth in his original complaint. This court accepts the facts as described in the original complaint as true").)[9]

Second, Plaintiff's attempt to distinguish between his employment as a "specialist" and as an attorney is an exercise in futility because the Amended Complaint's allegations are demonstrably false. Plaintiff's employment letter, which he signed, confirmed that he was hired as an attorney -- a "special associate" -- in the benefits group in Cravath's tax department. (11/9/2000 Letter from Patricia Geoghegan to James Colliton, Baron Decl., Ex. 9, at 1.)[10] He was explicitly described as a "lawyer" and expressly acknowledged his position. (Id. at 1-2.) Regardless of any alleged non-legal services he might have performed, his work as an

_____

[9] Indeed, Plaintiff seeks compensation and benefits allegedly paid to attorneys, not "specialists". For example, his verified Complaint alleged that Cravath promised him compensation and benefits that equaled or exceeded those of any other "non-partner attorney" (Compl. ¶ 12); he conveniently omits "attorney" in his Amended Complaint (Am Compl. ¶ 46). Similarly, he claims that Cravath breached its contractual obligations by paying Lawrence Witdorchic greater compensation and benefits in 2004, 2005, and 2006. (Id. ¶¶ 52-54.) Mr. Witdorchic (now a partner in the law firm of Paul, Weiss, Rifkind, Wharton & Garrison LLP) was a "non-partner attorney". (Compl. ¶ 14 (emphasis added).) Plaintiff also seeks a "make-up bonus" that Cravath allegedly promised to "all of its attorney employees". (Am. Compl. ¶ 58 (emphasis added).) Finally, Plaintiff's ERISA claims are based on a Plan for "[s]enior [a]ttorneys and [a]ssociates". (Id. ¶ 122.) Plaintiff cannot at the same time call himself a "specialist", not an attorney, and seek to enforce promises allegedly made to "attorneys".

[10] The Court is entitled to consider the entirety of documents integral to the complaint in ruling on a motion to dismiss. Cortec Indus., Inc. v. Sum Holding L.P., 949 F.2d 42, 47 (2d Cir. 1991). The employment letter plainly is integral to the Amended Complaint. Plaintiff's allegations relate directly to the terms of his employment. (See Am. Compl. ¶¶ 13-24, 74-75.) The employment letter sets forth the actual terms of that employment relationship in a writing signed by both parties. Therefore, the Court may properly consider it here. See Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co., 62 F.3d 69, 72 (2d Cir. 1995) (finding an agreement "integral" to the complaint because the plaintiffs relied heavily upon its terms and effect despite not incorporating it; the court was "not constrained to accept the allegations of the complaint in respect of the construction of the [a]greement"); Cortec, 949 F.2d at 44 ("Plaintiffs' failure to include matters of which as pleaders they had notice and which were integral to their claim -- and that they apparently most wanted to avoid -- may not serve as a means of forestalling the district court's decision on the motion.").

attorney was clearly "at the very core" of his employment by Cravath. See Wieder, 80 N.Y.2d at 635.

Third, even now -- in his transparently fabricated repleading -- Plaintiff admits that he was "continuously employed as an attorney . . . " by Cravath (Am. Compl. ¶ 13 (emphasis added)) and acknowledges that his "services to [Cravath] as an attorney (the 'Attorney Services') consisted of providing legal advice and services" (id. ¶ 16 (emphasis added)). Whatever other activities Plaintiff asserts he engaged in (see id. ¶ 24),[11] such activities do not alter those basic facts. Because, by his own admission, he was employed by Cravath at least in part "as an attorney", Wieder defines the standard of conduct he was obliged to meet while working for Cravath (i.e., compliance with the ethical standards of the legal profession) -- no matter what percentage of his time he now claims was spent on other things. His failure to meet that standard vitiated any compensation obligation he might otherwise try to pretend Cravath owed him, for the reasons discussed above. (See supra Parts I.A, I.B.)

Finally, and fundamentally, Cravath would not have hired Plaintiff or continued his employment -- as a lawyer, a "specialist" or in any other capacity -- had it known that he had engaged in felony sex crimes immediately prior to commencing his employment and was continuing his felonious misconduct in the years that followed. To suggest otherwise (see, e.g., Am. Compl. ¶ 36) is simply ludicrous. This Court need not entertain a lawsuit that rests squarely on the facially preposterous premise that Cravath would have knowingly hired or knowingly continued the employment of an active sex criminal. See Bell Atl., 127 S. Ct. at 1964-65. Thus,

---

[11] Indeed, Plaintiff gets confused by his own lies when he alleges that his "Specialist Services" included "advising associates in the Department on a wide array of legal and non-legal matters". (Am. Compl. ¶ 24 (emphasis added).)

Plaintiff's dishonest attempt to rewrite his pleading to emphasize the specialized nature of his practice leads nowhere.

## II.    THIS COURT SHOULD DISMISS PLAINTIFF'S CLAIMS FOR UNJUST ENRICHMENT.

Perhaps recognizing that his claims for breach of contract are fatally defective, Plaintiff now brings claims in the alternative based on a theory of unjust enrichment. (Am. Compl. ¶¶ 271, 278, 285, 287, 289, 291.)[12] "To prevail on a claim for unjust enrichment in New York, a plaintiff must establish 1) that the defendant benefited; 2) at the plaintiff's expense; and 3) that 'equity and good conscience' require restitution." Kaye v. Grossman, 202 F.3d 611, 616 (2d Cir. 2000). Unjust enrichment claims are equitable in nature. Golden Pac. Bancorp v. FDIC, No. 95 Civ. 9281, 2002 WL 31875395, at *15 (S.D.N.Y. Dec. 26, 2002) (Buchwald, J.). Plaintiff has failed to state a claim, and in any event, he is barred from seeking equitable relief by his undeniably unclean hands. Plaintiff's claims must be dismissed.

### A.    Plaintiff Has Failed to State a Claim.

Plaintiff has not come close to pleading facts establishing that "equity and good conscience" would permit, much less, "require" any relief here. Kaye, 202 F.3d at 616. To the contrary: "No one shall be permitted to profit by his own fraud, or to take advantage of his own wrong, or to found any claim upon his own iniquity, or to acquire property by his own crime." McConnell v. Commonwealth Pictures Corp., 7 N.Y.2d 465, 469 (1960) (quoting Carr v. Hoy, 2 N.Y.2d 185, 187 (1957)); see also Bankers Trust Co. v. Litton Sys., Inc., 599 F.2d 488, 492 (2d Cir. 1979). As the New York Court of Appeals has explained:

---

[12] Plaintiff makes no allegations in support of the laundry list of other bases for relief that he includes in his Fourteenth through Nineteenth Causes of Action (i.e., equity, quantum meruit, restitution, quasi-contract, and implied contract). Those causes of action must be dismissed for failure to state a claim and, to the extent they sound in equity, Plaintiff's recovery is also barred by his unclean hands. (See infra pp. 20-21.)

> "These maxims are dictated by public policy [and] have their foundation in universal law administered in all civilized countries . . . . We are not working here with narrow questions of technical law.  We are applying fundamental concepts of morality and fair dealing not to be weakened by exceptions. . . . [W]hatever be the law in other jurisdictions, we in New York deny awards for the corrupt performance of contracts even though in essence the contracts are not illegal".

McConnell, 7 N.Y.2d at 469-70.  Ignoring such fundamental concepts of morality and fair dealing, Plaintiff seeks just such an award, to profit from his own fraud and corruption.

Plaintiff fraudulently induced the formation of any alleged employment agreements.  (See supra pp. 12-13.)  He then committed multiple prior and subsequent material breaches of such agreements.  (See supra pp. 13-14.)  By failing to comply with the prevailing standards of professional conduct and committing crimes that mandated his automatic disbarment, he forfeited any right to recovery under New York law.  See Spivak v. Sachs, 16 N.Y.2d 163 (1965) (an attorney who performs legal services without a license cannot recover the reasonable value of his services under McConnell); NFS Servs., Inc. v. W. 73rd St. Assocs., 477 N.Y.S.2d 135, 138 (1st Dep't 1984) (a real estate broker who performs services without a license cannot recover for breach of contract or quantum meruit because "[t]he same analogy, applied to professionals, such as attorneys or doctors, would permit them to practice in the State without the formality of securing a license or authority to do so here, contrary to established practice and procedure"); Ben Krupinski Builder & Assocs., Inc. v. Baum, 828 N.Y.S.2d 583, 583 (2d Dep't 2007) (lack of a home improvement contractor license bars the contractor's claims of breach of contract and quantum meruit).  Plaintiff, whose crimes (if known to a prospective employer) would have disabled him from seeking employment with any law firm, may not now try to squeeze money out of the firm he successfully hoodwinked by seeking refuge in "equity and good conscience".  His claims must be dismissed.

19

In fact, since Plaintiff fraudulently induced any alleged employment agreement, Cravath may sue in equity to recover any benefit (e.g., compensation) conferred by the contract. See Bazzano v. L'Oreal, S.A., No. 93 Civ. 7121 (SHS), 1996 WL 254873, at *3 (S.D.N.Y. May 14, 1996) ("[A defrauded party] may seek, inter alia, to recover the consideration it has paid to the party that has committed the fraud, pursuant to the quasi-contract theory of unjust enrichment."). Cravath has not yet sought recovery of its payments and, therefore, Plaintiff has kept his ill-gotten gains to date. It is Plaintiff -- not Cravath -- who has been unjustly enriched.

**B.    Plaintiff's Unclean Hands Preclude Equitable Relief.**

"Courts apply the maxim requiring clean hands where the party asking for the invocation of an equitable doctrine has committed some unconscionable act that is 'directly related to the subject matter in litigation'". PenneCom B.V. v. Merrill Lynch & Co., 372 F.3d 488, 493 (2d Cir. 2004). Here, the Plaintiff seeking to invoke an equitable doctrine is a felon convicted of sex crimes who breached the core standards of the legal profession, a requirement of his employment by Cravath that is "so fundamental to the relationship and essential to its purpose as to require no expression". See Wieder, 80 N.Y.2d at 635-36. Thus, his recovery is barred by his admittedly unclean hands. See ENH, Inc. v. Int'l Diffusion SRL, No. 97 CIV. 3202 (LAP), 1997 WL 294388, at *1-*2 (S.D.N.Y. June 2, 1997) ("Equity affords wide discretion to the court refusing to aid the 'unclean litigant'."); Cohn & Berk v. Rothman-Goodman Mgmt. Corp., 509 N.Y.S.2d 367, 368 (2d Dep't 1986) ("[P]laintiff is barred from seeking the equitable remedy of recovering moneys obtained through unjust enrichment by the doctrine of unclean hands."); Haskins v. Thomajan, 470 N.Y.S.2d 41, 42 (2d Dep't 1984).

Plaintiff attempts to avoid the doctrine's application by alleging that his criminal misconduct is unrelated to this litigation's subject matter (Am. Compl. ¶¶ 172-75) and that Cravath also engaged in misconduct (id. ¶¶ 176-78). He cannot. First, Plaintiff's felonies bear

directly on the subject matter of his claims.  His sex crimes rendered him per se unfit to render the legal services that he was hired and paid to provide.  He may not plead around the obvious consequence of his felonies with the patently ridiculous allegation that Cravath would have hired him anyway.  (Id. ¶ 36.)[13]  Second, Cravath's alleged misconduct (see supra pp. 3-4 and infra pp. 24-27) is irrelevant to the application of the unclean hands doctrine.  See Precision Instrument Mfg. Co. v. Auto Maint. Mach. Co., 324 U.S. 806, 814-15 (1945) (the unclean hands maxim "closes the doors of a court of equity to one tainted with inequitableness or bad faith relative to the matter in which he seeks relief, however improper may have been the behavior of the defendant").  Plaintiff's fabricated and scurrilous allegations of discrimination and other misdeeds by Cravath have absolutely no relation to Plaintiff's own unjust enrichment claims, which are nothing but claims that he should have been paid more for the work he did at Cravath. See A.H. Emery Co. v. Marcan Prods. Corp., 389 F.2d 11, 18 (2d Cir. 1968) ("Misconduct in the abstract, unrelated to the claim to which it is asserted as a defense, does not constitute unclean hands."); Isaacson v. Isaacson, 28 N.Y.S.2d 517, 521 (Sup. Ct. 1941).  Plaintiff's indisputably unclean hands, as a convicted multiple felon, who committed felony statutory rape the day before he showed up to work at Cravath, bar any equitable recovery.

## III.    THIS COURT SHOULD DISMISS PLAINTIFF'S BREACH OF FIDUCIARY DUTY CLAIM.

Plaintiff alleges that he "experienced a financial loss and damages in connection with his participation in the Plan in the sum of $15,000" (Am. Compl. ¶ 239) because Cravath "caused a lack of required investment opportunities" (id. ¶ 156).  In its Pre-motion Letter to the Court, Cravath explained that the original Complaint failed to state a claim because it provided

---

[13] Plaintiff's assertion that Cravath was not injured by his misconduct (Am. Compl. ¶¶ 159-68) is so plainly false that it merits no further discussion.

no notice of how <u>Cravath</u>'s alleged conduct purportedly caused Plaintiff's losses. (Pre-motion Letter at 3.) The Amended Complaint is no better.

<u>First</u>, Plaintiff's allegations do not give rise to a claim of fiduciary breach. Matters concerning "the composition or design of the plan itself" are settlor functions, which do not implicate ERISA's fiduciary provisions. <u>See</u> <u>Hughes Aircraft Co. v. Jacobson</u>, 525 U.S. 432, 444 (1999) ("ERISA's fiduciary duty requirement simply is not implicated where [the employer], acting as the Plan's settlor, makes a decision regarding the form or structure of the Plan".). Therefore, even if Plaintiff suffered losses because the Plan exhibited a lack of investment opportunities (Am. Compl. ¶ 156) (and it did not), Plaintiff still would have no claim.

<u>Second</u>, Plaintiff has not even attempted to link Cravath's purported fiduciary breaches to his losses. Plaintiff sues under ERISA §§ 409 and 502(a)(2) (29 U.S.C. §§ 1109(a), 1132(a)(2)), which "require [him] to show that the loss claimed resulted from [Cravath's] breach". <u>Silverman v. Mut. Benefit Life Ins. Co.</u>, 138 F.3d 98, 104 (2d Cir. 1998). Even if Cravath breached its fiduciary duties under ERISA (and it did not), the Amended Complaint still does not come close to providing notice of how Plaintiff suffered $15,000 in losses as a result of the alleged "lack of required investment opportunities" that purportedly resulted, in unspecified fashion, from Cravath's alleged "breaches". (<u>See</u> Am. Compl. ¶ 156.) Plaintiff has made no attempt to allege a causal link even after Cravath highlighted the same defect in the original Complaint. (Pre-motion Letter at 3.) If he had <u>facts</u> establishing that Cravath somehow caused his losses, he was required to plead them in his Amended Complaint. He did not because he could not. His claim should be dismissed.

<u>Third</u>, even if the alleged fiduciary breaches caused Plaintiff's losses, Cravath still would not be liable. ERISA § 404(c) provides that, where a plan permits a participant to

22

exercise control over the assets in his account, a fiduciary shall not be liable for any loss that results from the participant's exercise of control.  See 29 U.S.C. § 1104(c)(1)(B).  The Plan satisfied all the requirements.  As mandated by the governing regulations, see CFR § 2550.404c-1, the SPD explained to participants how to make investment elections (SPD, Baron Decl., Ex. 10, at 8); informed them of the above-cited ERISA § 404(c) provision (id. at 12); and offered detailed information about investment alternatives (id. at 8-12).[14]  Therefore, Cravath is not responsible for Plaintiff's poor investment choices.

## IV.     THIS COURT SHOULD DISMISS PLAINTIFF'S CLAIM FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS.

In its Pre-motion Letter to the Court, Cravath explained that Plaintiff's claim for intentional infliction of emotional distress was time-barred and that his allegations failed to state a claim as a matter of law because, inter alia, any alleged breaches of his asserted privacy rights in the workplace were not actionable under New York law.  (Pre-motion Letter at 3.)[15]  In an obvious effort to plead around these incurable defects, Plaintiff has abandoned his claim based on purported privacy rights, and substituted an equally frivolous claim that Cravath

---

[14] This Court may consider the Plan documents on Cravath's motion to dismiss.  See Ambris v. Bank of N.Y., No. 96 Civ. 0061 LAP, 1997 WL 107632, at *2 (S.D.N.Y. Mar. 10, 1997); In re RCN Litig., No. 04-5068 (SRC), 2006 WL 753149, at *3 (D.N.J. Mar. 21, 2006); Pietrangelo v. NUI Corp., No. Civ. 04-3223 (GEB), 2005 WL 1703200, at *3 (D.N.J. July 20, 2005) (citing multiple cases).

[15] There is no right to privacy under New York common law.  See Young v. Chem. Bank, N.A., No. 87 CIV. 8601 (JFK), 1988 WL 130929, at *8 (S.D.N.Y. Dec. 1, 1988) (dismissing a complaint because a bank's disclosure of customer information to third parties was not actionable under New York law); Howell v. N.Y. Post Co., 81 N.Y.2d 115, 123 (1993).  New York's privacy statute, N.Y. Civ. Rights L. §§ 50, 51, is not even arguably implicated by Plaintiff's allegations here.  See Howell, 81 N.Y.2d at 123.  Therefore, any alleged "invasion of privacy" does not constitute an actionable injury.  See Chimarev v. TD Waterhouse Investor Servs., Inc., 280 F. Supp. 2d 208, 216 (S.D.N.Y. 2003) (dismissing an invasion of privacy claim because "New York's limited right of privacy does not prohibit an employer from accessing employee email and other documents produced on the company's system"); Clark v. Elam Sand and Gravel, Inc., 777 N.Y.S.2d 624, 626 (Sup. Ct. 2004).

"intentionally inflicted severe emotional distress" on him by, <u>inter</u> <u>alia</u>, discriminating against <u>other</u> employees (but not him) and engaging in criminal, fraudulent, and unethical conduct -- all with the intent to cause him emotional distress.  (Am. Compl. ¶¶ 182-86, 294-95.)  He also alleges that he somehow was not aware of the "heinous" (<u>id.</u> ¶ 183) conduct that supposedly caused him such "severe" (<u>id.</u> ¶ 294) emotional distress until 2008 (<u>id.</u> ¶ 185), years <u>after</u> he was fired by Cravath and even longer after the "heinous" acts allegedly occurred.  The claim is absurd on its face.

A.    **<u>Plaintiff's Claim Is Barred by the Applicable One-Year Statute of Limitations.</u>**

In New York, the statute of limitations for a claim of intentional infliction of emotional distress is one year.  <u>See</u> <u>Oshinsky v. N.Y.C. Hous. Auth.</u>, No. 98 Civ. 5467 (AGS), 1999 WL 553826, at *3 (S.D.N.Y. July 29, 1999); <u>Goldstein v. Mass. Mut. Life Ins. Co.</u>, 820 N.Y.S.2d 852 (2d Dep't 2006).  Plaintiff alleges that Cravath's purported misconduct occurred throughout his tenure.  (Am. Compl. ¶ 182.)  Plaintiff was fired on March 1, 2006.  (<u>See</u> <u>id.</u> ¶ 13.)  This action was commenced on December 27, 2007, more than twenty months later.  Therefore, any claim for the intentional infliction of emotional distress during his employment with Cravath is time-barred.

To avoid this obvious result, Plaintiff alleges that he did not discover and could not have discovered Cravath's purported "pattern of abuse and fraud" until 2008.  (<u>Id.</u> ¶ 185.)  That is nonsense.  Plaintiff expressly alleges that he witnessed numerous Cravath partners making "racist" and "sexist" remarks "[t]hroughout the Employment Period" (<u>id.</u> ¶¶ 83, 90, 96, 103).  More fundamentally, if something had happened during his employment that was "heinous, beyond the standards of civilized decency and utterly intolerable in a civilized society" (<u>id.</u> ¶ 183) <u>and</u> actually caused Plaintiff any emotional distress, it would not have taken him two

24

years after his employment was terminated (and he was imprisoned) upon the discovery of his felonies to become aware of these dreadful and supposedly traumatic misdeeds.  Plainly, if Cravath had done something so terrible that it could and did cause the requisite emotional injury to Plaintiff (see infra pp. 25-27), he would have been aware of it during his employment.  By asserting that he was not, in a transparent attempt to escape the time bar, Plaintiff concedes he has no claim.  Either way, his claim must be dismissed.

### B.      Plaintiff Has Failed to State a Claim as a Matter of Law.

To state a claim for intentional infliction of emotional distress, a plaintiff must plead four elements:  (1) extreme and outrageous conduct; (2) intent to cause, or disregard of a substantial probability of causing, severe emotional distress; (3) a causal connection between the conduct and injury; and (4) severe emotional distress.  See Smith v. N.Y. Presbyterian Hosp., No. 06 Civ. 4056, 2007 WL 2142312, at *15 (S.D.N.Y. July 18, 2007) (Buchwald, J.) (finding that an employer's alleged retaliation and harassment were not sufficiently outrageous to survive a motion to dismiss); Howell, 81 N.Y.2d at 121.  Plaintiff does not plead any of these elements, and his claim must be dismissed.

First, Cravath's alleged misconduct does not meet New York's stringent test for extreme and outrageous conduct.  "[T]he 'extreme and outrageous' element of emotional distress claims has proven to be extremely difficult to satisfy".  Fahmy v. Duane Reade, Inc., No. 05 Civ. 9479, 2006 WL 2322672, at *4 (S.D.N.Y. Aug. 8, 2006) (Buchwald, J.) (citation omitted).  Much of Cravath's purported misconduct supposedly created an "extremely stressful work environment" for Plaintiff. (Am. Compl. ¶¶ 186(k), (l), (m), (n), (o), (p).)  That is not sufficient.  See Lydeatte v. Bronx Overall Econ. Dev. Corp., No. 00 Civ. 5433 (GBD), 2001 WL 180055, at *2 (S.D.N.Y.  Feb. 22, 2001) ("Acts which merely constitute harassment, disrespectful or disparate treatment, a hostile environment, humiliating criticism, intimidation, insults or other

25

indignities fail to sustain a claim of intentional infliction of emotional distress because the conduct alleged is not sufficiently outrageous."). The rest of Plaintiff's allegations -- e.g., violating disciplinary rules, refusing to pay Plaintiff amounts claimed, and disposing of his personal property (Am. Compl. ¶¶ 186(b), (e), (f), (h), (i)) -- are also inadequate. See Howell, 81 N.Y.2d at 122 ("Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." (Internal quotation marks and citations omitted)).

Second, Plaintiff does not allege the requisite intent. "Under New York law, the conduct alleged must be intentionally directed at the plaintiff". Three Crown Ltd. P'ship v. Caxton Corp., 817 F. Supp. 1033, 1048 (S.D.N.Y. 1993) (internal quotation marks omitted); see also Green v. Leibowitz, 500 N.Y.S.2d 146, 148 (2d Dep't 1986). Plaintiff alleges no such thing. His boilerplate, conclusory assertions that Cravath "intend[ed] to bring about emotional distress in plaintiff" or "exhibit[ed] a reckless disregard for the likelihood of causing emotional distress in plaintiff" (Am. Compl. ¶ 182) are inadequate. Indeed, he fails to plead any facts plausibly suggesting that any of the misconduct he alleges was directed at him. (See id. ¶¶ 186(a), (c), (d), (k), (l), (m), (n), (o), (p).) To assert, for example, that Cravath discriminated against Jewish, female, Hispanic, and African-American attorneys (id. ¶ 186(a)) with the intention of inflicting emotional distress on Plaintiff -- who is none of those -- is simply ridiculous.

Third, Plaintiff alleges neither severe emotional distress nor a causal connection between Cravath's purported conduct and his supposed injury. His boilerplate assertions (see Am Compl. ¶¶ 294-95) do not suffice. Plaintiff must allege facts demonstrating such distress. See Smith, 2007 WL 2142312, at *15 ("Nor has [plaintiff] provided any fact, other than his own

statements parroting the law's requirement, that he endured severe emotional distress due to

defendants' conduct."). He does not. Plaintiff's claim must be dismissed.

## V.    THIS COURT SHOULD STRIKE THE AMENDED COMPLAINT'S MANY SCANDALOUS, IMMATERIAL, AND PREJUDICIAL ALLEGATIONS.

This Court has liberal discretion to strike from a pleading any "immaterial,

impertinent, or scandalous matter". Fed. R. Civ. P. 12(f); see also Pigford v. Veneman, 215

F.R.D. 2, 3-5 (D.D.C. 2003) (granting the defendant's motion to strike a filing that included

scandalous and "groundless accusation[s]" of racism made by the plaintiffs' class counsel against

the defendant's lead counsel). On their face, Plaintiff's frivolous allegations of discrimination

and criminal, fraudulent, and unethical conduct have no bearing on the subject matter of this case

-- Plaintiff's employment compensation. They can serve only to harass Cravath and result in

wasteful detours from the relevant issues (if any). They should be stricken.[16]

Plaintiff's allegations are scandalous and unfounded attacks on Cravath's moral

character. See Burger v. Health Ins. Plan of Greater N.Y., 684 F. Supp. 46, 52-53

(S.D.N.Y. 1998). They are immaterial, exhibiting "no essential or important relationship" to

Plaintiff's demand for further employment compensation. See Del. Health Care, Inc. v. MCD

Holding Co., 893 F. Supp. 1279, 1291-92 (D. Del. 1995) (internal quotation marks omitted).

They are prejudicial, threatening to distort a jury's perception of Cravath as Plaintiff continues to

---

[16] Cravath respectfully requests that the Court strike the following allegations: employee discrimination (Am. Compl. ¶¶ 76-104 and headings "G" through "J"); criminal, fraudulent, or unethical conduct (id. ¶¶ 105-21 and headings "K" and "L"; ¶¶ 140-141 and heading "M"; and ¶¶ 148-51 and heading "N"); unclean hands (id. ¶¶ 176-78 and heading "S"); intentional infliction of emotional distress (id. ¶¶ 182-86 and heading "U", id. ¶¶ 293-99 and heading "XXVI"); and, because these allegations form the basis for Plaintiff's claim for punitive damages, all references to such damages (id. ¶¶ 211, 236, 299, and demand for relief "b").

publicize his falsehoods in the media.  See G-I Holdings, Inc. v. Baron & Budd, 238 F. Supp. 2d

521, 556 (S.D.N.Y. 2002); Burger, 684 F. Supp. at 53.[17]

  In similar situations, courts have stricken such allegations.  See, e.g., Glover v.

Mary Jane M. Elliott, P.C., No. 1:07-CV-648, 2007 WL 2904050, at *5 (W.D. Mich.

Oct. 2, 2007) (striking "nonsensical" allegations that "Plaintiffs and/or their agents have engaged

in the unauthorized practice of law" and noting the "utter futility" of such allegations); Pigford,

215 F.R.D. at 3-5 (striking a filing that included accusations of racism by government attorneys);

Burger, 684 F. Supp. at 52-53 (striking allegations of, inter alia, overbilling because they had "no

bearing" on the plaintiff's claims).  So should this Court.  See Mahurin v. Moss, 313 F. Supp.

1264 (E.D. Mo. 1970) (striking a pro se complaint because it was "incoherent, rambling and

largely unintelligible" with assertions that were "scurrilous, scandalous and unsupported by

factual allegations" and "immaterial and unrelated to plaintiff's cause of action, if any").[18]

---

[17] As Plaintiff told this Court: "I note also the numerous magazine, newspaper and Internet journalists that have written, are writing, and will write articles about the action (I have expended multiple hours within just the preceding five days discussing the action with journalists)". (1/18/2008 Letter from James Colliton to the Hon. Naomi Reice Buchwald, Baron Decl., Ex. 11, at 3.)

[18] Striking such allegations will also save time and money by making it unnecessary to litigate irrelevant claims.  See Specialty Minerals, Inc. v. Pluess-Staufer AG, 395 F. Supp. 2d 109, 114 (S.D.N.Y. 2005) (finding that additional and broader discovery and the "increased time and expense of trial may constitute sufficient prejudice to warrant granting [a] Rule 12(f) motion").

## CONCLUSION

For the foregoing reasons, this Court should dismiss the Amended Complaint with prejudice or at least strike its scurrilous allegations.

April 14, 2008

Respectfully submitted,

CRAVATH, SWAINE & MOORE LLP,

by _____

Stuart W. Gold (SG-1291)
Robert H. Baron (RB-3765)
Members of the Firm

Worldwide Plaza
825 Eighth Avenue
New York, NY 10019
(212) 474-1000
sgold@cravath.com
rbaron@cravath.com

*Defendant pro se*